# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| SHEMIKA TURNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 1:19-cv-659-ACA |
| | ) |
| DAVID JEROME KINDS, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This action arises out of a March 23, 2017 motor vehicle accident involving Plaintiff Shemika Turner's car and a commercial tractor-trailer driven by Defendant David Jerome Kinds.

Ms. Turner's complaint asserts claims against Mr. Kinds for negligence and wantonness. The complaint also asserts claims against Evans Delivery Company, Inc. ("Evans Delivery") and ENC Holding Corporation ("ENC") for negligent entrustment; negligent hiring, training, supervision, and retention; agency; and respondeat superior.

Before the court is Defendants' motion for partial summary judgment. (Doc. 62). Mr. Kinds moves for summary judgment on Ms. Turner's wantonness claim. Evans Delivery moves for summary judgment on Ms. Turner's negligent entrustment and negligent hiring, training, supervision, and retention claims. And ENC moves for

summary judgment on Ms. Turner's negligent entrustment; negligent hiring, training, supervision, and retention; agency; and respondeat superior claims.

Because Ms. Turner has not presented evidence creating triable issues of fact on any of these claims, the court **GRANTS** Defendants' motion for partial summary judgment. The court **WILL ENTER** summary judgment in favor of Mr. Kinds on Ms. Turner's wantonness claim; in favor of Evans Delivery on Ms. Turner's negligent entrustment and negligent hiring, training, supervision, and retention claims; and in favor of ENC on Ms. Turner's negligent entrustment; negligent hiring, training, supervision, and retention; agency; and respondeat superior claims.

## I. BACKGROUND

On a motion for summary judgment, the court "draw[s] all inferences and review[s] all evidence in the light most favorable to the non-moving party." *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318 (11th Cir. 2012) (quotation marks omitted).

On the morning of the accident, Mr. Kinds was driving an empty tractor trailer from Tennessee to Georgia. (Doc. 66-19 at 6, 12). Around 6:00 a.m., Mr. Kinds pulled off the interstate in Lincoln, Alabama to refuel at a TA truck stop. (*Id.* at 16–17). Mr. Kinds was traveling southbound on Highway 77, a four lane highway with a turning lane. (*Id.* at 21; Doc. 66-35 at 2). Mr. Kinds testified that as he prepared to turn into the TA truck stop, he was unsure which of the two entrances tractor-trailers should use. (Doc. 66-19 at 21–22). Therefore, Mr. Kinds drove up the hill past the TA truck stop

2

and pulled into an empty restaurant parking lot so he could turn around and drive back to the TA truck stop. (*Id.* at 5, 22–23).

Mr. Kinds waited for traffic clear and began a left turn into the northbound lanes of Highway 77. (Doc. 66-19 at 53, 55–56). As he started to turn and enter the road, Mr. Kinds saw three or four cars at the bottom of the hill approaching his tractor-trailer in the southbound lanes. (*Id.*). Ms. Turner was driving one of those cars. She testified that she did not see Mr. Kinds' trailer until she reached the top of the hill. (Doc. 6637 at 22). Ms. Turner tried to brake but could not stop, and she hit the back of Mr. Kinds' trailer before he had completed the turn into the northbound lanes. (Doc. 66-19 at 53, 73; Doc. 66-37 at 22). As Mr. Kinds braked, Ms. Turner's car turned sideways. (Doc. 66-19 at 73).

Mr. Kinds has had his commercial driver's license since 2004, and at the time of the accident, Mr. Kinds was working as an independent contractor for Evans Delivery. (Doc. 66-1 at 136; Doc. 66-19 at 34, 39). Evans Delivery is a trucking company that moves freight across the country. (Doc. 66-1 at 8–9). ENC is the parent corporation of Evans Delivery's parent corporation. (*Id.* at 6 ). There is no direct relationship between ENC and Evans Delivery. (*Id.*).

Mr. Kinds has worked for Evans Delivery since 2011, with a brief break in early 2013. (Doc. 66-1 at 24). In the ten years before the accident, Mr. Kinds had been involved in five other accidents, one which resulted in injuries. (Doc. 66-38 at 2–5; Doc. 66-39). Mr. Kinds received a citation for only one of those accidents. (*Id.*). Also,

in the ten years before the accident, Mr. Kinds received six Federal Motor Carrier Safety Administration citations attributable to driving performance and one for an hours violation.  (Doc. 66-38 at 2–5).

## II.     DISCUSSION

In deciding a motion for summary judgment, the court must determine whether, accepting the evidence in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see also Hamilton*, 680 F.3d at 1318.  "[T]here is a genuine issue of material fact if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor."  *Looney v. Moore*, 886 F.3d 1058, 1062 (11th Cir. 2018) (quotation marks omitted).

    1.     <u>Wantonness (Count Two) Against Mr. Kinds</u>

In count two of her complaint, Ms. Turner asserts a wantonness claim against Mr. Kinds.  (Doc. 1-1 at 5–7).

Under Alabama law, "wantonness" is "the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result."  *Galaxy Cable, Inc. v. Davis*, 58 So. 3d 93, 101 (Ala. 2010) (quotation marks omitted).  "To establish wantonness, the plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty."  *Id.* (quotation marks omitted).  "Wantonness is not

merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability. Implicit in wanton . . . misconduct is [] acting, with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury . . . ." *Cheshire v. Putman*, 54 So. 3d 336, 343 (Ala. 2010) (quoting *McNeil v. Munson S.S. Lines*, 184 Ala. 420, 423 (1913)).

Mr. Kinds contends that he is entitled to summary judgment on Ms. Turner's wantonness claim because she has not presented any evidence that he consciously disregarded her safety or that he knew his acts or omissions would make her injuries likely or probable. (Doc. 67 at 7–12). Ms. Turner responds that the evidence creates triable issues of fact on wantonness because Mr. Kinds disregarded his CDL training and turned left into oncoming traffic. (Doc. 69 at 27–29). Ms. Turner's argument is not persuasive because it is based on a mischaracterization of the undisputed facts.

In the light most favorable to Ms. Turner, the evidence demonstrates that after Ms. Kinds pulled off the highway, he looked out his mirror and waited until traffic cleared. (Doc. 66-19 at 5, 53). Then, as he started to turn northbound, cars—including Ms. Turner's—were coming up the hill in the southbound lanes. (*Id.*). It is true that Mr. Kinds saw cars at the bottom of the hill as he was in the process of turning. (*Id.* at 31). But Mr. Kinds' undisputed testimony is that he waited "until the road cleared," and as he began his turn, he then saw the cars. (Doc. 66-19 at 56; *see id.* at 53). Because Mr. Kinds looked for other cars and did not turn until the southbound lanes were clear,

5

no reasonable jury could infer that he made a conscious decision to pull into oncoming traffic or that his turn would likely or probably cause Ms. Turner's injuries.

Accordingly, the court **GRANTS** Mr. Kinds' motion for summary judgment on Ms. Turner's wantonness claim and the court **WILL ENTER** summary judgment in favor Mr. Kinds on the claim.

> 2. Negligent Entrustment (Count Three) and Negligent Hiring, Training, Supervision, and Retention (Count Four) Against Evans Delivery

In Counts Three and Four of her complaint, Ms. Turner asserts claims for negligent entrustment and negligent hiring, training, supervision, and retention against Evans Delivery.

Under Alabama law, a negligent entrustment claim requires proof of, among other things, entrustment to a known incompetent driver. *Prill v. Marrone*, 23 So.3d 1, 8 (Ala. 2009).

Concerning negligent hiring, training, supervision, and retention, the Alabama Supreme Court has explained that "[i]n the master and servant relationship, the master is held responsible for his servant's incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him." *Synergies3 Tec Servs., LLC v. Corvo*, --- So. 3d ----, 2020 WL 4913636, at *9 (Ala. 2020) (quotations omitted). "Liability depends upon it being established by affirmative proof that such incompetency was actually known by the master or that, had he exercised due and

proper diligence, he would have learned that which would charge him in the law with such knowledge." *Id.* (quotations omitted).

Accordingly, to prevail on either claim, Ms. Turner must show that Evans Delivery knew that Mr. Kinds was incompetent to drive. Evans Delivery moves for summary judgment on both claims, arguing that Ms. Turner has not met that burden of proof. The court agrees.

"[T]he incompetence of a driver is measured by the driver's demonstrated ability (or inability) to properly drive a vehicle." *Halford v. Alamo Rent-A-Car, LLC*, 921 So. 2d 409, 413–14 (Ala. 2005). To show incompetency, a plaintiff must present evidence that the driver was "unable or unlikely to have operated the motor vehicle with reasonable safety due to one of several characteristics or conditions," including "general incompetence" or "habitual negligence." *Edwards v. Valentine*, 926 So.2d 315, 321–22 (Ala. 2005) (quotations omitted); *McGowin v. Howard*, 36 So. 2d 323, 325 (Ala. 1948) ("[I]ncompetency is connected conjunctively with carelessness, indifference, heedlessness and recklessness.").

Here, it is undisputed that between 2007 and when the accident occurred in 2017, Mr. Kinds was involved in five motor vehicle accidents, and he was cited for only one of those accidents. (Doc. 66-8 at 2–5; Doc. 66-9). In addition, in the three years between 2013 when Evans Delivery rehired Mr. Kinds and 2017 when the accident took place, Mr. Kinds was involved in only one previous accident and had received three Federal Motor Carrier Safety Administration citations. (Doc. 66-8 at 2–5). Ms. Turner

does not attempt to argue that this evidence is sufficient to demonstrate incompetence. In fact, her brief does not address the incompetence element of her claims at all other than to concede that Mr. Kinds "was a qualified driver when Evans Delivery hired him." (Doc. 69 at 24; *see id.* at 25–26).

Rather Ms. Turner argues that Evans Delivery should have foreseen that the accident in question would occur "by inadequately training" Mr. Kinds on the specific type of turn he performed the day of the accident. (*Id.* at 25). But Ms. Turner cites no evidence demonstrating how any training that Evans Delivery provided in this regard was insufficient. (*See id.*). Her attorney merely makes the conclusory allegation that "Defendant Kinds was not adequately trained or supervised by Evans Delivery." (Doc. 69 at 26). But even assuming the training was not adequate, the fact remains that Ms. Turner has not met her burden of showing by "affirmative proof" that Mr. Kinds was incompetent, or even if he were, that Evans Delivery knew of any incompetence.

Accordingly, the court **GRANTS** Evans Delivery's motion for summary judgment on Ms. Turner's negligent entrustment and negligent hiring, training, supervision, and retention claims and **WILL ENTER** summary judgment in favor of Evans Delivery on those claims.

3.     Claims Against ENC

In Counts Three through Six of her complaint, Ms. Kinds asserts claims against ENC for negligent entrustment; negligent hiring, training, supervision, and retention; agency; and respondeat superior. (Doc. 1-1 at 7–12). ENC moves for summary

judgment on all claims asserted against it because it argues that it is a distinct corporate entity from Evans Delivery, and Ms. Turner has not presented evidence sufficient to pierce the corporate veil and hold ENC liable for the acts of Evans Delivery or Mr. Kinds. (Doc. 67 at 2, 16–17).

Ms. Turner's brief does not address ENC's argument. (*See generally* doc. 69). To the extent Mr. Turner does not oppose ENC's motion for summary judgment as to the claims asserted against it, the court "must consider the merits of the motion." *United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami*, 363 F.3d 1099, 1101 (11th Cir. 2004) (citing *Dunlap v. Transamerica Occidental Life Ins. Co.*, 858 F.2d 629, 632 (11th Cir. 1988)). This is because, even when a motion for summary judgment is not opposed, "the movant is not 'absolved of the burden of showing that it is entitled to judgment as a matter of law.'" *Reese v. Herbert*, 527 F.3d 1253, 1268–69 (11th Cir. 2008). Upon a review of the evidence, the court finds that ENC is entitled to judgment as a matter of law because Ms. Turner has not established that Evans Delivery or Mr. Kinds is a mere alter ego of ENC.

The Alabama Supreme Court has held that "a parent corporation which owns all the stock of a subsidiary corporation is not liable for acts of its subsidiary corporation, unless the parent corporation so controls the operation of the subsidiary corporation as to make it a mere adjunct, instrumentality, or alter ego of the parent corporation." *Hill v. Fairfield Nursing and Rehab. Ctr., LLC*, 134 So. 3d 396, 408 (Ala. 2013). To determine whether a parent company controls the operation of a

subsidiary sufficient to pierce the corporate veil and hold the parent corporation liable, the court considers a number of factors including, but not limited to: (1) whether the parent corporation owns most of all of the subsidiary's capital stock and finances the subsidiary; (2) whether the parent corporation and subsidiary share directors or officers; (3) whether the subsidiary has "grossly inadequate capital;" (4) whether the parent corporation pays the salaries and other expenses or losses of the subsidiary; (5) whether the subsidiary "has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation;" and (6) whether the subsidiary observes formal legal requirements. *Id.* (quotations omitted).

Here, there is no evidence that ENC is the parent corporation of Evans Delivery or that it controls Evans Delivery in any manner. ENC is a holding company that has no employees, no acting president, and no headquarters. (Doc. 66-1 at 6). ENC is the parent corporation of Evans Delivery's parent corporation. (*Id.*). Evans Delivery is not a member of ENC, and there is no direct relationship between the two entities. (*Id.*). In short, Ms. Turner points to no evidence creating questions of fact about whether Evans Delivery or Kinds is a mere alter ego of ENC such that ENC may be liable for any of their acts.

Accordingly, the court **GRANTS** ENC's motion for summary judgment and **WILL ENTER** summary judgment in favor of ENC on all claims asserted against it.

## III.  CONCLUSION

For the reasons explained above, the court **GRANTS** Defendants' motion for patrial summary judgment.  The court will enter a separate partial judgment consistent with this order.

Ms. Turner's negligence claim (Count One) against Mr. Kinds and her agency (Count Five) and respondeat superior (Count Six) claims against Evans Delivery will proceed.

**DONE** and **ORDERED** this April 27, 2021.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE